[Cite as *State ex rel. Internatl. Assn. of Fire Fighters v. Barbish*, 2024-Ohio-3148.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO ex rel.<br>THE INTERNATIONAL ASSOCIATION<br>OF FIRE FIGHTERS, LOCAL 1536,<br>AFL-CIO,<br><br>　　　　　Relator-Appellant,<br><br>　　- v -<br><br>JOHN BARBISH, IN HIS OFFICIAL<br>CAPACITY AS MAYOR AND<br>DIRECTOR OF PUBLIC SAFETY, et al.,<br><br>　　　　　Respondents-Appellees,<br><br>JAMES G. POWERS,<br><br>　　　　　Intervenor-Appellee. | **CASE NO. 2021-L-103**<br><br>Civil Appeal from the<br>Court of Common Pleas<br><br><br>Trial Court No. 2020 CV 001168 |

## O P I N I O N

Decided: August 19, 2024
Judgment: Affirmed

*Joseph W. Diemert, Jr.*, *Thomas M. Hanculak*, and *Mark V. Guidetti*, Diemert & Associates Co., LPA, 1360 SOM Center Road, Cleveland, OH 44124 (For Relator-Appellant).

*John D. Latchney*, Hanna Campbell & Powell, LLP, 3737 Embassy Parkway, Suite 100, Akron, OH 44333 (For Respondents-Appellees).

*Alexander L. Ewing* and *Charles B. Galvin*, Frost Brown Todd LLC, 9277 Centre Pointe Drive, Suite 300, West Chester, OH 45069, and *Stuart G. Torch*, Elfvin, Klingshirn, Royer & Torch, LLC, 4700 Rockside Road, Suite 530, Independence, OH 44131 (For Intervenor-Appellee).


MATT LYNCH, J.

{¶1} Relator-appellant, International Association of Fire Fighters, Local 1536, appealed from the judgments of the Lake County Court of Common Pleas, granting partial judgment on the pleadings and summary judgment in favor of respondents-appellees, John Barbish, the Mayor of Wickliffe; the City of Wickliffe Civil Service Commission; the City of Wickliffe; and intervenor-appellee, James Powers. This matter is presently before the court on remand from the Ohio Supreme Court for consideration of those issues previously found to be moot. For the following reasons, we affirm the decision of the lower court on the second and third assignments of error.

{¶2} On September 21, 2020, Local 1536 filed a Complaint for Declaratory Judgment, Permanent Injunction, and Petition for Writ of Mandamus against Barbish, the City of Wickliffe Civil Service Commission, and the City of Wickliffe. The Complaint alleged that the Wickliffe Fire Chief, James Powers, retired on January 6, 2020, and was rehired the next day by Mayor Barbish, in violation of civil service laws requiring that the vacancy be filled through a competitive promotional examination process. It requested relief in the form of a declaratory judgment that Powers does not properly hold the position of Fire Chief, an injunction preventing non-competitive means for filling vacancies in the Division of Fire, and a writ of mandamus ordering the vacancy be filled through the examination process. The Complaint further requested "reasonable attorneys' fees incurred by Plaintiff-Relator relative to the filing of this Complaint and Petition"; "punitive damages as a result of the Defendants-Respondents' malicious and intentional refusal to follow the mandates of State and local civil service law"; and "any and all other relief, including alternative relief, both legal and equitable that this Court is empowered to grant to Plaintiff-Relator." Powers was subsequently permitted to intervene in the matter.

2

{¶3} On December 10, 2020, Barbish and Wickliffe filed a Motion for Partial Judgment on the Pleadings, seeking dismissal of the Petition for Writ of Mandamus and dismissal of the claims for punitive damages and attorney's fees. The parties also filed competing motions for summary judgment regarding whether the vacancy was required to be filled through competitive examination.

{¶4} The parties filed joint stipulations of fact which established, in pertinent part, the following facts: Powers retired as the Wickliffe Chief of Fire on January 6, 2020. Mayor Barbish and the city submitted paperwork to the Ohio Police and Fire Pension Fund verifying that Powers retired on January 6 and was rehired by Barbish on January 7. He was sworn in by Barbish on January 7. At a subsequent city council meeting, Barbish represented that Powers' retirement and rehiring was "an administrative change" and Powers "did not vacate the position." No process was initiated under the civil service rules to fill the vacancy for the Fire Chief position. Local 1536 sent communications to the Civil Service Commission and the Law Director stating that the vacancy should be filled via a competitive promotional examination but Powers remained in the position of Fire Chief.

{¶5} In a June 14, 2021 Opinion and Journal Entry, the lower court granted the request for partial judgment on the pleadings as to punitive damages and attorney's fees, finding these were not recoverable. It found that Local 1536 failed to seek compensatory damages in its complaint and punitive damages could not lie without compensatory damages. It further found that the grounds for seeking attorney's fees in a mandamus action or in a declaratory judgment action were not applicable, nor were such fees available in the action seeking injunctive relief. The court subsequently issued an August 26, 2021 Opinion and Judgment Entry granting appellees' motions for summary judgment and concluding that

3

there had been no vacancy in the chief position.

{¶6} Local 1536 appealed to this court, assigning three errors. On appeal, this court determined a "vacancy" for the position of Fire Chief had not been created since there was no permanent departure. *State ex rel. Internatl. Assn. of Fire Fighters v. Barbish*, 2022-Ohio-2201, ¶ 24 and 31 (11th Dist.). The remaining assignments relating to damages and attorney's fees were found moot given the disposition of the first assignment of error. *Id.* at ¶ 34.

{¶7} Local 1536 appealed to the Ohio Supreme Court. It found that Powers' retirement created a vacancy requiring initiation of the competitive exam process. *State ex rel. Internatl. Assn. of Fire Fighters v. Sakacs*, 2023-Ohio-2976, ¶ 22. It remanded for this court to "consider Local 1536's assignments of error that it had deemed moot." *Id.* at ¶ 26. We now address the second and third assignments of error.

{¶8} In its second assignment of error, Local 1536 argues: "The Trial Court erred in granting Appellees' Motion for Partial Judgment on the Pleadings denying recovery of punitive damages."

{¶9} "Civ.R. 12(C) motions are specifically for resolving questions of law." *Redding v. United States Parachute Assn., Inc.*, 2023-Ohio-884, ¶ 31 (11th Dist.). "A court must construe as true all of the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party." (Citations omitted.) *Id.* "To grant judgment on the pleadings the trial court must determine 'that no material factual issues exist and that the movant is entitled to judgment as a matter of law.'" *Maplewood at Chardon, LLC v. Stinn*, 2023-Ohio-2539, ¶ 10 (11th Dist.), citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). The standard of review for a ruling on a motion

4

for judgment on the pleadings is de novo. *Maplewood* at ¶ 11. "De novo review requires an independent examination of the record and law without deference to the trial court's decision." (Citation omitted.) *Id.*

{¶10} On the issue of punitive damages, the trial court made the following findings: punitive damages could not be awarded because compensatory damages were not sought; "[a]s against a municipal corporation, it has long been decided that absent some statutory authority that punitive damages are not recoverable"; and R.C. 2731.11 provides that recovery in mandamus is only permitted for damages "sustained before the writ is granted, not in pursuit of the writ."

{¶11} Local 1536 first argues that the lower court erred in granting judgment on the pleadings in favor of appellees on the issue of punitive damages due to Local 1536's failure to request compensatory damages.

{¶12} The Ohio Supreme Court has held that punitive damages may not be awarded in the absence of compensable harm. "[A] plaintiff must be awarded some measure of compensatory damages to receive punitive damages." *Niskanen v. Giant Eagle, Inc.*, 2009-Ohio-3626, ¶ 12. "Punitive damages are awarded as punishment for causing compensable harm and as a deterrent against similar action in the future. No civil cause of action in this state may be maintained simply for punitive damages." (Citation omitted.) *Id.* at ¶ 13; *also Malone v. Courtyard by Marriott L.P.*, 74 Ohio St.3d 440, 447 (1996) ("punitive damages may not be awarded when a jury fails to award compensatory damages").

{¶13} The trial court found that punitive damages could not be awarded since there was no request for compensatory damages. It is correct that Local 1536 did not specifically request compensatory damages. However, in addition to requests for injunctive relief, a writ

5

of mandamus, declaratory judgment, punitive damages, and attorney fees, it included in the complaint a request for "any and all other relief, including alternative relief, both legal and equitable that this Court is empowered to grant to Plaintiff-Relator."

{¶14} Courts have found that a "catch-all" provision requesting all available legal and equitable relief provides grounds for the court to award damages not specifically requested. *See State ex rel. Blackwell v. Bachrach*, 166 Ohio St. 301, 303 (1957) (the request "for all other relief that is proper in such cases, either at equity or law" was sufficient to grant relief that was consistent with the allegations of the petition); *First Natl. Bank of Bellvue v. NE Port Invests., LLC*, 2015-Ohio-558, ¶ 28 (6th Dist.) ("simply pleading that one is entitled to 'all remedies at law and equity' or praying for 'such relief as may be just and equitable' may ordinarily suffice to entitle a party to relief not specifically requested"); *State ex rel. Rothal v. Smith*, 2002-Ohio-7328, ¶ 81 (9th Dist.) (inclusion of language that appellees "further ask for all else to which they are entitled in equity or at law" was sufficient for the court to award damages to which they were entitled).

{¶15} Civil Rule 54(C) provides: "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." It has been observed that the party seeking relief is not "necessarily confined to the request for recovery in the prayer" and can seek to amend their request for relief subject to Civ.R. 15(A). (Citation omitted.) *Germadnik v. Auld*, 2018-Ohio-2889, ¶ 12 (11th Dist.). Here, the issue of damages and relief sought was decided by the court pursuant to a motion for judgment on the pleadings. Although a request for "any and all" legal or equitable relief was made, the granting of the motion for judgment on the pleadings prevented appellant from

6

seeking leave to amend its request for damages or present evidence to demonstrate entitlement to such damages under Civ.R. 54. While recognizing that the compensatory damages to which Local 1536 might be entitled may not be fully evident at this stage of the proceedings, we emphasize that, a motion for judgment on the pleadings may be granted only if "the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Bend-Fast, Inc. v. SBA Monarch Towers III, LLC*, 2024-Ohio-2036, ¶ 37 (11th Dist.). *See Chase Home Fin., LLC v. Literski*, 2014-Ohio-615, ¶ 12 (1st Dist.) ("[t]he trial court was required to accept the [plaintiffs'] allegation that they had suffered pecuniary damage as true at this stage of the proceedings").

{¶16} The next reason provided as grounds for granting the motion for judgment on the pleadings was that a municipal corporation is not subject to an award of punitive damages. Appellees contend that punitive damages could not be awarded against them since they are political subdivisions.

{¶17} The Ohio Supreme Court "has long prohibited the assessment of punitive damages against a municipal corporation, except when specifically permitted by statute." *Cementech, Inc. v. Fairlawn*, 2006-Ohio-2991, ¶ 12, citing *Ranells v. Cleveland*, 41 Ohio St.2d 1, 6-7 (1975) (emphasizing that the burden of punitive damages assessed on a municipal corporation would fall on the taxpayers). Under this principle, punitive damages could not be assessed against the City of Wickliffe. *See* Ohio Const., art. XVIII, § 1 ("[m]unicipal corporations are . . . classified into cities and villages"). While Local 1536 argues that "an award of punitive damages is proper in a mandamus action, particularly where a municipality has intentionally subverted longstanding civil service laws," it does not cite to any statutes or other provisions to support a conclusion that punitive damages can

7

Case No. 2021-L-103

be assessed against a city as a municipal corporation.

{¶18} Further, R.C. 2744.05(A) provides: "Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function . . . [p]unitive or exemplary damages shall not be awarded." "'Political subdivision' . . . means a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." R.C. 2744.01(F).

{¶19} As noted above, the City of Wickliffe is a political subdivision since it is a municipal corporation. As to the Wickliffe Civil Service Commission, it also falls under R.C. 2744.05(A). A political subdivision includes a "body corporate and politic," which is "a governmental body . . . having powers and duties of government. . . . [It is a body] created by the state for political purposes and to act as an agency in the administration of civil government . . . and usually invested, for that purpose, with subordinate and local powers of legislation." (Citation omitted.) *Hamilton Cty. Bd. of Mental Retardation and Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 150 (1989). The Civil Service Commission falls under this definition as a body created under R.C. 124.40 which has power to "prescribe, amend, and enforce rules" regarding civil service. R.C. 124.40(A). *See Studer v. Seneca Cty. Humane Soc.*, 2000 WL 566738, *3 (3d Dist. May 4, 2000) (a humane society is a body corporate and politic since the Revised Code provided for its organization and it has the power to arrest and prosecute, serving a governmental function similar to law enforcement).

8

**{¶20}** Finally, Mayor Barbish was an employee of a political subdivision. While immunity is generally extended to employees of political subdivisions, such is not the case when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner" or such acts fall manifestly outside of the scope of employment. *Alcus v. Bainbridge Twp.*, 2020-Ohio-543, ¶ 138-139 (11th Dist.), citing R.C. 2744.03(A)(6). "Immunity from punitive damages available to political subdivisions is not available to government employees sued in their individual capacity and outside the scope of their official capacity." *Hope Academy Broadway Campus v. Integrated Consulting & Mgt.*, 2011-Ohio-6622, ¶ 28 (8th Dist.). Here, the complaint alleged that punitive damages resulted from "Defendants-Respondents['] malicious and intentional refusal to follow" civil service laws.

**{¶21}** However, to determine whether the foregoing applies, it is necessary to decide whether Barbish was sued in his individual or official capacity. "[A] suit against a political-subdivision employee in his or her official capacity is treated the same as a suit against the political subdivision itself." *Alcus* at ¶ 141. Where "the allegations contained in the complaint are ostensively directed against the office and against the named officeholder in the officeholder's official capacity . . . [t]his is the equivalent of suing the political subdivision rather than the officeholder in an individual or personal capacity." *Lambert v. Clancey*, 2010-Ohio-1483, ¶ 21 and 17 (where "the named defendant holds an elected office within a political subdivision . . . and that officeholder is sued in his or her official capacity . . . the employee-immunity provisions of R.C. 2744.03(A)(6)" do not apply). As noted above, "[i]mmunity from punitive damages available to political subdivisions is not available to government employees sued in their individual capacity." *Hope Academy* at ¶ 28.

**{¶22}** In *Lambert*, the Ohio Supreme Court addressed whether a clerk of courts was

9

sued individually or in his official capacity. It considered that the complaint named "Greg Hartmann, Hamilton County, Ohio, Clerk of Courts," did not include the words "personally" or "individually," and that the allegations in the complaint pertained to policies of the clerk of courts' office rather than "actions taken by Hartmann personally." *Id.* at ¶ 15-16 ("Lambert's complaint asserts claims against the office of the clerk of the Hamilton County clerk of courts, an elected position within a political subdivision held by Greg Hartmann at the time the complaint was filed").

{¶23} This court found board of education members were sued in their official capacity where the complaint alleged they were "acting in the course and scope of their duties," the allegations were general as to "all defendants" including the Board and School District, and the substance of the pleading "fail[ed] to specifically allege the board members transcended their official duties." (Emphasis omitted.) *Parmertor v. Chardon Local Schools*, 2016-Ohio-761, ¶ 32 (11th Dist.) *See also Cool v. Brown-Clark*, 2020-Ohio-6968, ¶ 24 (7th Dist.) (defendant was sued in her official capacity where the complaint and caption did not state that the clerk was sued individually, damages were sought against both the clerk and the city, and allegations were made that she engaged in negligent, wanton, and malicious conduct but that her conduct was "ratified" by the city and she was acting under its direction and control).

{¶24} In contrast, an employee has been found to be sued in his individual capacity where the allegations in the complaint did not challenge policies and practices of the government office, the employer was not named in the complaint, and the complaint alleged the employee "personally engaged in actions that subject him to liability as an employee of" the school district. *Doe 1 v. Licate*, 2019-Ohio-412, ¶ 43 (11th Dist.). This court has also

10

Case No. 2021-L-103

found a defendant was sued in his individual capacity where it was alleged he negligently operated a backhoe and was sued for punitive damages, as "[a] request for punitive damages suggests an employee is being sued as an individual." *Alcus,* 2020-Ohio-543, at ¶ 144. *See also Curry v. Blanchester*, 2010-Ohio-3368, ¶ 22 (12th Dist.) (in determining that a party is being sued individually, courts have considered allegations in the complaint that the actions were not committed in the scope of employment and that the allegations pertained to the actions of the defendant personally "and not to the policies and practices" of the government entity for which they worked).

{¶25} Regarding whether Barbish was sued in his official capacity, we initially observe that the case caption lists "John Barbish In his official capacity as mayor and Director of Public Safety, City of Wickliffe, Ohio." This court has found that a complaint's caption is not determinative as to "the nature of the claims." (Citation omitted.) *Parmertor* at ¶ 31. It is noteworthy, however, that the Ohio Supreme Court in the appeal of this matter observed: "The complaint named as a defendant John Barbish in his official capacity as mayor and director of public safety for the city," and it substituted Joseph Sakacs, who succeeded Barbish as mayor/public-safety director, as a party on appeal. *Sakacs*, 2023-Ohio-2976, at ¶ 4, fn. 1.

{¶26} Further, we observe that punitive damages were sought "as a result of the Defendants-Respondents['] malicious and intentional refusal to follow the mandates of State and local civil service law." Presumably, this request included all defendants. While seeking punitive damages against a defendant has been considered as "suggesting" the defendant was sued individually, this was based on the assumption that a plaintiff would not seek punitive damages against a political subdivision since they are not permitted. *Alcus* at ¶

11

144, citing *Thompson v. Buckeye Joint Vocational School Dist.*, 2016-Ohio-2804, ¶ 40 (5th Dist.) ("the request for punitive damages suggests Davis is being sued as an individual . . . as punitive damages cannot be awarded against a political subdivision performing a governmental function"). As explained above, the plaintiffs sought punitive damages against all defendants, including the Wickliffe Civil Service Commission and the City of Wickliffe, even though the law provides that such damages are not proper against a political subdivision. The fact that Local 1536 sought punitive damages against "defendants-respondents" does not demonstrate whether it sued Barbish in his individual capacity.

{¶27} With the foregoing in mind, we proceed to a review of the allegations in the Complaint. The Complaint set forth actions taken by Mayor Barbish, including rehiring Powers, directing appropriation of his pension, authoring a memo in relation to his retirement package, presenting an ordinance regarding his salary to the City Council, and "failing to take action to enforce mandatory civil service laws for filling the vacancy." The Complaint does not state that Barbish was sued "individually" or "personally." It states that "Mayor Barbish is the City's Director of Public Safety and, in that capacity, serves as the appointing authority for the Division of Fire." The allegations related to actions taken in his official position to hire and address matters relating to employees. *See Kirkhart v. Keiper*, 2004-Ohio-1496, ¶ 14 (acts by county commissioners relating to an employee's rate of pay and discharge, as well as the choice of an employee as dog warden, were acts taken and which "*could only have been taken*—in the exercise of their official duties and responsibilities as public officials and due to the official position that [they] occupied as public officials").

{¶28} Further, the motion for judgment on the pleadings and response to this motion, which are properly considered to determine the capacity under which a defendant was sued,

12

demonstrate that Barbish was sued in his official capacity. *See Thompson*, 2016-Ohio-2804, at ¶ 41 (to determine in what capacity a plaintiff has sued a defendant, courts may examine both the complaint and the "course of proceedings"). In their motion, defendants argued that Barbish had been sued only in his official capacity and was not a real party in interest. Local 1536 did not deny it had sued Barbish in his official capacity. Instead, in its brief in opposition, it argued that, "in cases seeking a writ of mandamus, litigation is properly brought against elected officials in their official capacity," referencing Barbish. This lends support to the conclusion that this action was pursued against Barbish in his official capacity. In its argument on damages in that filing, it also argued that "the City [e]ffectively punished Local 1536's members by . . . attempting to avoid holding a promotional examination," that "[r]equiring the City to pay attorneys' fees helps to correct the unjust behavior," and that the court "possesses the ability to grant any and all relief . . . to correct the wrongs perpetrated by the City." It did not mention damages in relation to Barbish individually.

{¶29} For these reasons, we find that the trial court did not err in determining punitive damages were improper. While it did not specifically rule on whether damages could be sought against Barbish on the grounds outlined above, we observe "that a reviewing court has a duty to affirm the trial court's judgment when the judgment is correct albeit based on the wrong reason." (Citation omitted.) *DePizzo v. Stabile*, 2006-Ohio-6102, ¶ 11 (11th Dist.). Since punitive damages cannot be recovered on the ground that the parties were a municipal corporation or political subdivisions, we decline to address the merits of issues relating to whether punitive damages are appropriate in mandamus or non-tort claims.

{¶30} The second assignment of error is without merit.

{¶31} In its third assignment of error, Local 1536 argues: "The Trial Court Erred in

13

granting Appellees' Motion for Partial Judgement on the Pleadings denying recovery of attorney fees."

**{¶32}** The trial court found that R.C. 2721.16(A) allows attorney fees only in certain situations for declaratory judgments which do not apply here; attorney fees are not permitted when seeking injunctive relief; and exceptions to the "American Rule" do not apply.

**{¶33}** "Ohio courts generally follow the 'American rule' with respect to attorney fees: each party is responsible for its own attorney fees." *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 2020-Ohio-1056, ¶ 9. As a general matter, it has been held that "attorney fees are not recoverable as damages in a mandamus action under R.C. 2731.11." *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.*, 93 Ohio St.3d 449, 451 (2001); *State ex rel. Murphy v. Indus. Comm.*, 61 Ohio St.2d 312, 313 (1980). Similarly, "attorney's fees are generally not recoverable in a proceeding for declaratory relief" unless "[a] section of the Revised Code explicitly authorizes" such award or "[a]n award of attorney's fees is authorized by section 2323.51 of the Revised Code, by the Civil Rules, or by an award of punitive or exemplary damages." *Jasper v. White*, 2023-Ohio-2358, ¶ 45 (3d Dist.), citing R.C. 2721.16.

**{¶34}** While attorney fees are generally not recoverable in the foregoing situations, there are some exceptions. "Attorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558 (1994). As noted above, punitive damages would not have been properly awarded in the present matter.

**{¶35}** Further, "[a] prevailing party may recover attorney's fees under" the following exceptions to the American Rule: "(1) a statute creating a duty to pay the fees, (2) the losing

party acted in bad faith, or (3) the parties contract to shift fees." *Clem v. Steiner*, 2003-Ohio-4865, ¶ 24 (11th Dist.), citing *Pegan v. Crawmer*, 79 Ohio St.3d 155, 156 (1997) ("in the absence of statutory authorization or a finding of conduct that amounts to bad faith, a prevailing party may not recover attorney fees"); *Chapnick* at 450 ('[t]he general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith") (citations omitted). A party can recover attorney fees if the opposing party "was found to have acted in bad faith" which "can involve conduct during litigation, but can also involve conduct giving rise to a party's claim." *Cleveland Fire Fighters, Local 93 of the I.A.F.F. v. Cleveland*, 2020-Ohio-4751, ¶ 37 (8th Dist.).

**{¶36}** Local 1536 argues that bad faith was alleged in the complaint through its claims that damages should be awarded "as a result of the Defendants-Respondents['] malicious and intentional refusal" to follow civil service law.

**{¶37}** We initially observe that it has been held that there is an exception to the American Rule where a defendant acts with malice, but for attorney fees to be awarded under this exception, there must also be an award of punitive damages. *See Zappitelli v. Miller*, 2007-Ohio-3251, ¶ 6, citing *Digital & Analog Design Corp. v. N. Supply Co.*, 63 Ohio St.3d 657, 662 (1992) ("[w]ithout a finding of malice and the award of punitive damages, plaintiff cannot justify the award of attorney fees"); *Nozik v. McDonald*, 1999 WL 454503, *11 (11th Dist. June 25, 1999) ("[a]ttorney fees also may be awarded when there has been a finding of actual malice and an award of punitive damages"). While there is an allegation of malice in the complaint, there can be no award of punitive damages to support an award of attorney fees under this exception.

15

Case No. 2021-L-103

{¶38} Local 1536 argues, however, that the bad faith exception applies. It points to its request for damages alleging the malicious and intentional refusal to follow the law. While the complaint specifically alleges malice, it does not make specific allegations of bad faith, which is defined as a "dishonest purpose, conscious wrongdoing or breach of a known duty by some ulterior motive or ill will characterized by fraud." *Cawley v. Lake Cty. Sheriff*, 1995 WL 238608, *3 (11th Dist. Apr. 7, 1995). In *Catalanotto v. Byrd*, 2017-Ohio-7688 (9th Dist.), the court found that attorney fees could not be awarded for bad faith when the party's counterclaim made only allegations of malice and did not allege "bad faith conduct." *Id.* at ¶ 24 ("Ms. Byrd's counterclaim did not allege bad faith conduct, but instead alleged 'intentional'" and malicious conduct).

{¶39} Local 1536 argues that it alleged bad faith in its brief in opposition to the judgment on the pleadings through arguments regarding "unjust behavior engaged in by the Appellees." The cited portion of its brief argues only that the defendants did not comply with and carry out required functions under the law, much like the allegations in the complaint that there was a lack of compliance with law requiring civil service competitive examination rules be followed. The allegations that the defendants failed to apply the law do not fit under the definition of bad faith as they do not demonstrate dishonest purpose, conscious wrongdoing, or a breach of duty through an ulterior motive or ill will.

{¶40} Since there were no punitive damages to support a claim of malice for attorney fees and allegations of bad faith were not made in the complaint, we do not find that proper grounds for an award of attorney fees were raised or that reversal of the trial court's judgment on this issue is warranted.

{¶41} The third assignment of error is without merit.

16

Case No. 2021-L-103

{¶42} For the foregoing reasons, we find that the second and third assignments of error which we were to consider on remand are without merit. We affirm the judgment of the Lake County Court of Common Pleas granting judgment on the pleadings on the issues of punitive damages and attorney fees. Costs to be taxed against appellant.

JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2021-L-103